Christyne M. Martens
Wyoming State Bar No. 7-5044
Assistant United States Attorney
District of Wyoming
P.O. Box 22211
Casper, WY 82602-5010
307-261-5434
christyne.martens@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| **v.** | **Criminal No. 26-CR-39-S** |
| **JOSE BENITO OCON,** | |
| Defendant. | |

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT DUE TO PROSECUTORIAL MISCONDUCT AND STRUCTURAL DEFECT IN GRAND JURY PROCEEDING

On April 28, 2026, the Defendant moved to dismiss the indictment against him alleging that misconduct by United States Attorney Darin Smith unconstitutionally biased the grand jury. (Doc. 38). While USA Smith's comments were ill advised, they were not as offensive as the Defendant contends when fairly viewed in context. But even taken at face value, Defendant's allegations are not the type that could result in the dismissal of the indictment against him.

Furthermore, the selection process for the grand jury ensured that each grand juror was thoroughly educated on his or her independent role and each grand juror took an oath to exercise that judgement. In view of the extensive process geared toward selecting an unbiased and independent grand jury, the Defendant cannot show he was prejudiced.

To conserve judicial resources, and the resources of the parties, the United States requests that any hearing on this motion be combined with any hearing on the same motion filed in *United States v. Michael Hopper,* USDC 26-CR-28-J; *United States v. Cheyenne Swett,* USDC 26-CR-30-S; *United States v. Brian Johnson,* USDC 26-CR33-J; *United States v. Dennison Antelope,* USDC 260CR-34-J; *United States v. Matthew Jacoby,* USDC 26-CR-35-S; *United States v. Matthew Miller, Jr.,* USDC 26-CR036-J; and *United States v. Wolf Elkins Duran,* USDC 26-CR-38-S. However, the United States objects to any examination of the grand jurors or any probe into the sufficiency of the evidence supporting the indictment.

## I.    Factual and Procedural Background

On August 7, 2025, the Defendant was sitting in the back of a vehicle driving down the highway near the 17 Mile Bridge on the Wind River Indian Reservation. The Defendant shot Shaw Whiteman, who was seated next to him, in the head without provocation, killing him. After killing Shaw Whiteman, the Defendant pointed the firearm at Littlefawn Lebeau and Amanda Brown, who were both seated in the front of the vehicle, and threatened to also kill them and then kill himself.

On March 16, 2026, a pool of potential grand jurors was gathered at the federal courthouse in Casper, Wyoming. Before any formal proceedings began, USA Smith engaged members of the pool of potential grand jurors in conversation. Once the presiding judge entered the courtroom, the proceedings were transcribed. During those proceedings, the need to independently and fairly consider the evidence was repeatedly emphasized, the court instructed the grand jury on its obligations to independently consider each case, and the grand jury swore an oath to uphold its duties.

On March 18, 2026, the assigned AUSA presented evidence to the grand jury in support of the indictment against the Defendant charging him with one count of First Degree Murder in violation of 18 U.S.C. §§ 1111 and 1153, one count of Discharging a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii), one count of Causing Death With a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and (j), and two counts of Assault with a Dangerous Weapon with Intent to Do Bodily Harm in violation of 18 U.S.C. §§ 113(a)(3) and 1153. (Doc. 19). The grand jury returned an indictment. (*Id*.). While the transcript of the Defendant's individual grand jury proceedings are available to him by virtue of the court's order, (Doc. 27), he has not requested that the transcript be provided to him in discovery.

On April 28, 2026, the Defendant moved to dismiss the indictment alleging misconduct before the grand jury by USA Smith. (Doc. 38). In response to the allegations in the Defendant's motion, and consistent with the duties imposed on attorneys by Wyoming Rules of Professional Conduct 1.1 (Competence), 1.3 (Diligence), and 5.1 (Supervisory Attorneys), and knowing that USA Smith sat in on several individual grand jury presentations and was present during several breaks, the United States Attorney's Office under took a review of the March 2026 grand jury proceedings to determine if any additional conduct should be disclosed to the court. The United States Attorney's Office found that pursuant to Wyoming Rules of Professional Conduct 3.3 (Candor), 4.1 (Truthfulness), and 8.4 (Avoiding Misconduct), the following additional information must be disclosed:

1) During a break, an AUSA saw USA Smith handing out business cards and invited the grand jury panel members to reach out to him. USA Smith reports no grand jurors have reached out to him.

3

2) After a presentation and vote, but before going on the record for the next case, the foreperson asked something to the effect of "are you going to give us a hard case?" At that point, USA Smith stood up and said something to the effect of, "like I told you guys before, we're only giving you 'slam dunks'". The AUSA who witnessed this corrected that statement by telling the grand jury there would be hard cases and then left the room.

3) USA Smith asked for the list of grand jurors. However, he reports that he has not done anything with it.

## II.    Dismissal is not warranted

The right to be indicted by a grand jury before answering for a federal capital crime or felony is enshrined in the Fifth Amendment to the United States Constitution. The purpose of that requirement "is to limit [an individual's] jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 218 (1960). Thus, a grand jury is both a means to bring the accused to trial and a means to protect citizens from unfounded accusations. *Id*. at 218 n.3.

Even so, the role of the grand jury is "not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." *United States v. Williams*, 504 U.S. 36, 51 (1992). And in making that "assessment it has always been thought sufficient to hear only the prosecutor's side." *Id*. While a prosecutor is not required to be balanced in his or her presentation to a grand jury, *id*. at 52, he or she should still avoid misconduct.

"Dismissal of an indictment returned after deliberation by a grand jury is a very drastic action." *United States v. Hillman*, 642 F.3d 929, 933 (10th Cir. 2011) (quoting *United States v. Anderson*, 778 F.2d 602, 606 (10th Cir. 1985)). Consequently, even where prosecutorial misconduct has occurred, a district court cannot dismiss an indictment unless the defendant has

4

been prejudiced. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988). In this context, prejudice means that "the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id*. at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring)). But prejudice may be presumed where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." *Id*. These sorts of structural flaws are exemplified by racial and gender discrimination in the selection of the grand jury. *Id*. at 257; *see also United States v. Lopez-Guitierrez*, 83 F.3d 1235, 1245-46 (10th Cir. 1996) (unknowing presentation of false evidence and a comment on Defendant's Fifth Amendment right to silence were not structural flaws); *Coppedge v. United States*, 311 F.2d 128, 131-32 (D.C. Cir. 1962) (rejecting notion that grand jury that heard perjured testimony is "biased" as term is used in *Costello v. United States*, 350 U.S. 359 (1956) and its progeny). The alleged misconduct here does not approach the level of structural error contemplated by *Bank of Nova Scotia*, so the court must examine the allegations for prejudice before considering dismissal as a remedy.

However, "*Bank of Nova Scotia . . .* , makes clear that the supervisory power can be used to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions." *United States v. Williams*, 504 U.S. 36, 46 & n.6 (1992) (citations omitted). That authority does not extend to allowing courts to establish standards of prosecutorial conduct in front of grand juries. *Id*. at 46-47. It only allows courts to vindicate legally compelled standards of conduct, such as those that exist in the Federal Rules of Criminal Procedure and the United States Code. *Id*. at 46 n.6. In *Williams,* the Supreme Court explained:

> That some of the misconduct alleged in *Bank of Nova Scotia*, was not specifically proscribed by Rule, statute, or the Constitution does not make the case stand for a judicially prescribable grand jury code. All of the allegations of violation were dismissed by the Court—without considering their validity in law—for failure to meet *Nova Scotia's* dismissal standard.

*Id*. (citations omitted).

Here, the Defendant has failed to allege any misconduct prohibited by the Federal Rules of Criminal Procedure or the United States Code. Instead, he relies on the judicially established standards of good conduct invoking the court's supervisory powers. But that is not enough for prejudice after *Williams*, and it cannot support the dismissal of the indictment here. *United States v. Carter*, 2005 WL 180914, *2-3 (S.D.N.Y. Jan. 25, 2005) (unpublished).

After *Williams*, the Tenth Circuit has said that courts may dismiss indictments "for prosecutorial misconduct which is flagrant to the point that there is some significant infringement on the grand jury's ability to exercise independent judgment." *United States v. Hillman*, 642 F.3d 929, 934 (10th Cir. 2011) (quoting *United States v. Pino,* 708 F.2d 523, 530 (10th Cir. 1983)). However, the Tenth Circuit does not appear to have directly grappled with how *Williams* narrowed the class of cases in which a court may find the necessary prejudice to dismiss in an indictment. Instead, the Tenth Circuit has continued to refer to cases that predate both *Bank of Nova Scotia* and *Williams*. *See Hillman*, 642 F.3d at 934-35 (citing *Pino*, 708 F.2d 523 and *United States v. Kilpatrick*, 821 F.2d 1456 (10th Cir.1987)); *Lopez-Gutierrez*, 83 F.3d at 1244-45 (citing *Kilpatrick*). But even applying an overly broad prejudice standard, the Tenth Circuit has still said that, at bottom, this court must find that prosecutorial misconduct overbore the will of the grand jury so that the decision to indict was no longer its own. *See Hillman*, 642 F.3d at 934. That is a high standard. And where a court is using its supervisory powers, it is well established that dismissal is generally not an appropriate remedy to sanction bad conduct by the government.

6

*United States v. Hasting*, 461 U.S. 499, 506-07 (1983). That is because dismissals do not necessarily punish the prosecutor[1] but instead punish the victims of crime and damage the public's interest in holding criminals responsible. *Id*. at 507; *see also United States v. Ceccolini*, 435 U.S. 268, 279 (1978) (recognizing that "penalties visited upon the Government" are also visited "upon the public.").

While the United States disputes the Defendant's characterization of USA Smith's statements, he still cannot succeed even if this court takes the allegations at face value under the Tenth Circuit's standards. They are simply not the kind of comments that would overbear the will of the grand jury. He has made no allegation of any flaw in the presentation in his own case. Instead, he relies on brief generalized comments disconnected from his own proceedings. In doing so, the Defendant essentially alleges that USA Smith, in the abstract, told the grand jury that all of the defendants whose cases they would consider were bad people that were guilty of heinous crimes. This boils down to an accusation that USA Smith expressed his personal opinion about the evidence and attacked the Defendant's character to inflame the grand jury. And the United States Attorney's Office investigation revealed that USA Smith was perhaps overly informal and friendly with the grand jury.

Prosecutors should not express their personal opinions about the guilt of the accused during grand jury proceedings. *United States v. Sears, Roebuck & Co*., 719 F.2d 1386, 1393-94 (9th Cir. 1983). Even so, such comments generally do not warrant dismissal of an indictment. Because the process is accusatory and the prosecutor presents indictments, grand jurors are necessarily aware that the prosecutor believes that an indictment is warranted. *Id*. at 1393. And, where the prosecutor

---

[1] Alternative avenues exist to hold prosecutors accountable for misconduct. *United States v. Hasting*, 461 U.S. 499, 506 n.5 (1983).

counterbalances his comments, they are not prejudicial. *Id.* Here, the extensive selection process, the grand jury's oath, and the court's instructions emphasized the need for the grand jury to independently consider the evidence before it. There is no reason to believe that the grand jury did not follow the court's instructions. USA Smith's brief commentary in the abstract did not so poison the well that the grand jury's will was overborne. Thus, the Defendant cannot show prejudice.

Prosecutors should avoid derogatory statements about a target's character or other crimes because such statements risk inflaming or improperly influencing the decision of the grand jury. *See United States v. Storey*, 2 F.3d 1037, 1039 (10th Cir. 1993); *United States v. Ogden*, 703 F.2d 629, 637 (1st Cir. 1983); *see also United States v. Jones*, 468 F.3d 704, 708 (10th Cir. 2006) (while it is improper to use closing argument to inflame the passions of the jury it need not be a detached lecture). And while it is improper for an attorney to discuss facts not in the grand jury record, a preview of a witness's anticipated testimony is appropriate. *See United States v. Wiseman*, 172 F.3d 1196, 1204–05 (10th Cir. 1999). Here, it was true that the grand jury would hear a variety of cases, some dealing with heinous crimes such as murder, and that the cast of characters they would hear about would be undesirable in many respects. The fact that this commentary was rooted in truth blunts any prejudicial impact. Furthermore, these comments were also made in the abstract and not directed at any one Defendant. Here as well, the extensive selection process, the grand jury's oath, and the court's instructions emphasized the need for the grand jury to independently consider the evidence before it. There is no reason to believe that the grand jury did not follow the court's instructions. USA Smith's brief commentary in the abstract did not so poison the well that the grand jury's will was overborne. Thus, the Defendant cannot show prejudice.

Finally, prosecutors should not take steps that could be seen as an attempt to curry favor with the grand jury. *United States v. Breslin*, 916 F. Supp. 438, 443 (E.D. Pa. 1996) (unpublished)

("The prosecutor has an obligation not to engage in techniques, either knowingly or inadvertently, to curry favor with the grand jurors and lead them to abrogate their role as unbiased factfinders. The court finds that it is inappropriate for the prosecutor to provide snacks to a grand jury, and that his suggestion that the donuts were provided because the task they were about to start was unpleasant made the situation worse."). While handing out business cards and engaging in casual banter might be characterized as overly friendly or inadvertently currying favor, it is certainly not the kind of thing that would overbear the grand jury's will and cause them to abandon their role as a body. As with the other allegations, the extensive selection process, the grand jury's oath, and the court's instructions emphasized the need for the grand jury to independently consider the evidence before it. There is no reason to believe that the grand jury did not follow the court's instructions. Thus, the Defendant cannot show prejudice.

### III.    Grand Jurors cannot be questioned about their decisions to indict.

The Defendant has asked that this court unseal the grand jury transcripts and order an examination of the grand jurors to determine whether he was prejudiced. (Doc. 38 at 6-7). The court has already denied the defendant's request to unseal the transcripts and is undertaking a review to ensure that they are disclosed only to the extent necessary. (Doc. 43). It should also deny any request to question grand jurors.

> The Supreme Court has consistently
>
> recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings. In particular, [the Court has] noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving

the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*United States v. Sells Eng'g, Inc*., 463 U.S. 418, 424 (1983) (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218–219 (1979)). "Rule 6(e) of the Federal Rules of Criminal Procedure codifies the traditional rule of grand jury secrecy." *Id.* at 425.

Rule 6(e) does not allow for the disclosure of a grand juror's deliberation or vote. Fed. R. Crim. P. 6(e)(3)(A). Defendant cites no authority for his request to examine grand jurors because there is none. More importantly, any such inquiry would invade the secrecy and independence of the grand jury. *Williams*, 504 U.S. at 48 (describing independence and secrecy of the grand jury); *see also United States v. Calandra*, 414 U.S. 338, 343-44 (1974); *c.f.* Fed. R. Evid. 606; *Tanner v. United States*, 483 U.S. 107, 117 (1987) (discussion of firmly established common-law rule flatly prohibiting the admission of juror testimony to impeach a jury verdict). Therefore, grand jurors cannot be summoned in any fashion to be questioned about their deliberations or votes.

This cannot be justified even based on allegations of prosecutorial misconduct. "'[T]he whole history of the grand jury institution' demonstrates that 'a challenge to the reliability or competence of the evidence' supporting a grand jury's finding of probable cause 'will not be heard.'" *Kaley v. United States*, 571 U.S. 320, 328 (2014) (quoting *United States v. Williams,* 504 U.S. 36, 54 (1992)). Prosecutorial misconduct claims cannot be used to circumvent this rule. *Williams,* 504 U.S. at 54 & n.8 ("It would make little sense, we think, to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation. A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was "incomplete" or "misleading."'"). And because the Defendant's allegations do not extend to any conduct in the individual proceeding regarding his indictment, any inquiry would be all the more troubling.

The United States has submitted a copy of the transcripts for the grand jury selection process along with Defendant's grand jury proceedings, under seal, to this court. (Doc. 45).  As explained in the accompanying motion, (Doc. 41), this was done to ensure that the record in each Defendant's case was clear, complete, and preserved. The court has undertaken the appropriate examination of those transcripts *in camera* to protect the secrecy and independence of the grand jury, and the United States trusts that this court will continue to carefully guard grand jury secrecy in the resolution of this motion to dismiss. Accordingly, this court should deny any request to question either the grand jury panel or any individual grand juror.

## IV.    Any allegations of taint will be cured going forward.

To avoid protracted litigation, in this case and many others, the United States intends to take two steps. First, it will seek the empanelment of a new grand jury. Second, it will re-present the Defendant's case to the new panel that will have never heard USA Smith's remarks. *United States v. Benjamin*, 2019 WL 4920875, *12 (D.V.I. Oct. 5, 2019) (collecting cases for the proposition the re-presentation cures any error in the original grand jury proceeding).

The Defendant is currently being transported to a Bureau of Prisons facility where he will undergo a court ordered competency evaluation. The United States does not anticipate any delay resulting from the forthcoming superseding indictment.

**DATED** this 8th day of May, 2026.

STEPHANIE I. SPRECHER
First Assistant United States Attorney


By:    */s/ Christyne M. Martens*
CHRISTYNE M. MARTENS
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of May 2026, the foregoing was electronically filed and consequently served on counsel for the Defendant.

*/s/ Heidi Mason*
UNITED STATES ATTORNEY'S OFFICE